Citation Nr: 1829340 
Decision Date: 05/24/18 Archive Date: 06/12/18

DOCKET NO. 08-11 750 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to an initial compensable rating for bilateral sensorineural hearing loss.

2. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD), prior to October 21, 2010.

3. Entitlement to a total disability rating based on individual unemployabitlity (TDIU) due to service connected disabilities, prior to October 21, 2010.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran and his spouse

ATTORNEY FOR THE BOARD

Amanda Baker, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1966 to September 1969.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a November 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. The RO in Houston, Texas currently has jurisdiction of the appeal.

In an October 2013 decision, the Board denied the claim for an initial compensable rating for bilateral hearing loss and remanded the remaining claims to the agency of original jurisdiction (AOJ) for additional development. The Veteran appealed the denial of an initial compensable rating for bilateral hearing loss to the United States Court of Appeals for Veterans Claims (Court). Based on a Joint Motion for Remand (JMR), the Court issued an order in October 2014 that remanded the case to the Board for readjudication, and issuance of a new decision.

In March 2015, the Board vacated the October 2013 decision that denied an initial compensable rating for bilateral hearing loss, and remanded the underlying merits along with PTSD and TDIU claims to the AOJ for additional development.

In a March 2016 rating decision, the RO increased the rating for PTSD to 100 percent, effective October 21, 2010. From that date, represents a full grant of the benefits sought on appeal, as such, the PTSD issue has been recharacterized to reflect the period prior to October 21, 2010. The TDIU issue arises from the Veteran's testimony in May 2013 that his PTSD was a major factor in his decision to retire. The only disabilities for which service connection had been established prior to October 28, 2015 are peripheral neuropathy of each lower extremity, tinea cruris, and hearing loss. There is no contention that any of these disabilities acting alone prevented the Veteran from securing or following a substantially gainful occupation. SMC at the housebound rate has been granted effective October 28, 2915. Hence, there is no issue of entitlement to TDIU for any period after October 21, 2010 before the Board. As such, the claims have been recharacterized as reflected on the title page.

The Veteran testified at a Travel Board hearing before a Veterans Law Judge (VLJ) of the Board in May 2013. A transcript of the hearing is associated with the record. The law requires that the VLJ who conducts a hearing on an appeal must participate in any decision made on that appeal. 38 U.S.C. § 7107(c) (2012); 38 C.F.R. § 20.707 (2017). However, the VLJ who conducted the May 2013 hearing is no longer employed by the Board. In February 2018, the Veteran and his representative were sent a letter notifying them that the VLJ who presided over the hearing is no longer employed by the Board, and offering another hearing before a different VLJ. The Veteran responded by indicating that he did not desire another Board hearing, and wanted the Board to consider the case on the evidence of record.


FINDINGS OF FACT

1. The Veteran's bilateral sensorineural hearing loss, has been manifested by no worse than Level I hearing acuity in both right and left ears.

2. Prior to October 21, 2010, the Veteran's service-connected PTSD was manifested by no more than occupational and social impairment with occasional decrease in work efficiency and intermitted periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: anxiety, suspiciousness, panic attacks, depressed mood, sleep impairment, and mild memory loss.

3. Prior to October 21, 2010, the Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation.



CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for bilateral sensorineural hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.85, 4.86, Diagnostic Code 6100 (2017).

2. The criteria for an initial rating in excess of 30 percent for PTSD, prior to October 21, 2010, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.130, Diagnostic Code 9411 (2017).

3. The criteria for entitlement to a TDIU, prior to October 21, 2010, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.321, 3.340, 3.341, 4.3, 4.16, 4.19 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See generally, 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. § 3.159, 3.326 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008). 

A. Hearing Loss

The Veteran contends his hearing loss warrants a compensable rating. He testified before the Board in May 2013 that his hearing loss makes it difficult to hear conversation where the person is not in the same immediate, quiet room. He is currently assigned a noncompensable rating under 38 C.F.R. § 4.85, Diagnostic Code 6100 (2017).

Ratings for hearing loss disability are based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination testing together with the average hearing threshold level, in decibels (dB) as measured by pure tone audiometric tests in the frequencies 1,000, 2,000, 3,000 and 4,000 Hertz (Hz). 38 C.F.R. § 4.85, Diagnostic Code 6100. An examination for hearing impairment for VA purposes must include a controlled speech discrimination test (Maryland CNC). Id. To evaluate the degree of disability from defective hearing, the rating schedule requires assignment of a Roman numeral designation, ranging from I to XI. Other than exceptional cases, VA arrives at the proper designation by mechanical application of Table VI, which determines the designation based on results of standard test parameters. Id. Table VII is then applied to arrive at a rating based upon the respective Roman numeral designations for each ear. Id.

Exceptional patterns of hearing impairment allow for assignment of the Roman numeral designation through the use of Table VI or an alternate table, Table VIA, whichever is more beneficial to the Veteran. 38 C.F.R. § 4.86. This applies to two patterns. In both patterns each ear will be evaluated separately. Id. The first pattern is where the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hz) is 55 dB or more. 38 C.F.R. § 4.86(a). The second pattern is where the pure tone threshold is 30 decibels or less at 1000 Hz and 70 dB or more at 2000 Hz. Id. If the second pattern exists, the Roman numeral will be elevated to the next higher numeral. Id. In describing the evidence the Board refers to the frequencies of 1000 Hz, 2000 Hz, 3000 Hz, and 4000 Hz, as the frequencies of interest. 

VA outpatient treatment records are largely silent as to any ongoing treatment for hearing loss. However, audiological testing results from 1989, 2001, 2003, 2004, and 2005 are of record. Nevertheless, none of the test results included speech discrimination scores and, therefore, none of the results are appropriate for rating purposes here. See 38 C.F.R. § 4.85(a) (an examination for hearing impairment for VA purposes must, among other things, include a controlled speech discrimination test (Maryland CNC)). However, the audiologists at those times found "normal hearing for speech sounds," bilaterally, except for at high pitches in the left ear. Hearing protection was recommended when around loud noises, but the Veteran was not prescribed hearing aids. The Veteran similarly testified before the Board in May 2013 that he had never been prescribed hearing aids.

The Veteran was afforded a VA examination in December 2004. The examination revealed right ear auditory thresholds in the frequencies 1000, 2000, 3000, and 4000 Hertz as 15, 5, 25, and 45 dB respectively; for the left ear, auditory thresholds in the same frequencies were recorded as 15, 10, 45, and 65 dB. Average loss in the right ear was listed as 23, and average loss in the left ear was 34. Speech recognition ability was 92 percent in both ears. The results of this examination correspond to Level 1 hearing bilaterally. 38 C.F.R. § 4.85(b). When these values are applied to Table VII, a noncompensable disability rating is assigned. 38 C.F.R. § 4.85. 

The Veteran was afforded a VA examination in July 2010. The examination revealed right ear auditory thresholds in the frequencies 1000, 2000, 3000, and 4000 Hertz as 10, 5, 25, and 45 dB respectively; for the left ear, auditory thresholds in the same frequencies were recorded as 15, 5, 35, and 55 dB. Average loss in the right ear was listed as 21, and average loss in the left ear was 28. Speech recognition ability was 94 percent in both ears. The results of this examination corresponded to Level 1 hearing bilaterally. 38 C.F.R. § 4.85(b). When these values are applied to Table VII, a noncompensable disability rating is assigned. 38 C.F.R. § 4.85. The examiner noted the Veteran's difficulty understanding conversation with background noise and complaints of ringing, hissing, and buzzing sounds. The Veteran reported that he was not employed. Despite the Veteran's complaints and medical history, the examiner found no need for any ongoing medical follow-up. 

As indicated above, the Board originally denied entitlement to an initial compensable rating for bilateral hearing loss in an October 2013 decision. In October 2014, the Court, in a JMR, instructed the Board to vacate the denial and remand the underlying merits of the claim to schedule the Veteran for a new VA examination. In a March 2015 decision, the Board vacated the matter and remanded the claim pursuant to the JMR.

The Veteran was afforded a VA audiological examination in January 2016. The examination revealed right ear auditory thresholds in the frequencies 1000, 2000, 3000, and 4000 Hertz as 30, 15, 45, and 70 dB respectively; for the left ear, auditory thresholds in the same frequencies were recorded as 25, 15, 50, and 75 dB. Average loss in the right ear was listed as 40 dB, and average loss in the left ear was 41 dB. Speech recognition ability was 96 percent in both ears. The results of this examination correspond to Level I hearing bilaterally. 38 C.F.R. § 4.85(b). When these values are applied to Table VII, a noncompensable disability rating is assigned. 38 C.F.R. § 4.85. 

Ratings for hearing impairment are derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). The evidence here does not show that the Veteran's bilateral hearing loss reached a compensable level of severity at any point during the period under appeal. The Veteran contends that his bilateral hearing loss warrants a compensable rating. The Veteran's statements are competent evidence as to his personal observations regarding his symptomatology. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the Veteran is without audiological training and, therefore, his statements are not competent to provide an opinion regarding his current level of hearing loss under the Rating Schedule. 

In reaching this decision, the Board considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the Veteran's claim of rating for bilateral sensorineural hearing loss, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


B. PTSD

The Veteran claims that his PTSD symptoms warrant a rating in excess of 30 percent, prior to October 21, 2010, due to worsening of symptoms. See October 2010 VA Form 21-4138. He has been granted a total disability rating (100 percent) effective October 21, 2010. See March 2016 Rating Decision.
 
Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran's PTSD is currently assigned a 30 percent disability rating, prior to October21, 2010, under 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

Turning to the rating criteria, the Board first observes that the symptoms listed in VA's general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

Under the General Rating Formula for Mental Disorders, a 30 percent evaluation for PTSD will be assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, without routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130.

An evaluation of 50 percent is warranted for PTSD with occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. See Id. 

A 70 percent evaluation is warranted for PTSD with occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. See Id. 

A 100 percent evaluation is warranted for PTSD with total occupational and social impairment, due to symptoms such as the following: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. See Id. 

When it is not possible to separate the effects of a non-service-connected condition from those of a service-connected disorder, reasonable doubt should be resolved in the claimant's favor with regard to the question of whether certain signs and symptoms can be attributed to the service-connected disability. See Mittleider v. West, 11 Vet. App. 181, 182 (1998); see also 38 C.F.R. § 3.102; Mauerhan v. Principi, 16 Vet. App. 436 (2002) (factors listed in the rating formula are examples of conditions that warrant a particular rating and are used to help differentiate between the different evaluation levels.). 

The record includes VA examination reports, VA and private treatment records, and lay statements from the Veteran. All of these records have been reviewed by the Board, although they will not all be discussed in assessing the rating assigned to the Veteran's psychiatric disability.

The Veteran was afforded a December 2004 VA examination. He complained of nightmares, trouble sleeping, thrashing, startle response, and temper problems. He demonstrated avoidance behavior, such as avoiding watching news about the war and visiting friends. He denied having any psychiatric hospitalizations or emergency rooms visits. The examiner noted that the Veteran had increased arousal and was constantly vigilant. On mental status examination, appearance, hygiene, and behavior were appropriate. His mood was subdued and affect blunted. Speech was normal. There was no history of delusions, hallucinations, illusions, or obsessive rituals. Thinking processes were intact, with no impairment in judgment or abstract thinking. Memory appeared intact. Symptoms were described as chronic in nature. The examiner concluded that the Veteran had great difficulty responding to others appropriately on social basis, but he could understand commands without difficulty and was not a risk to himself or others.

In a statement received in September 2005, a private physician reported that the Veteran had symptoms of frequent and violent insomnia, recurring nightmares, and bouts of crying, anger and acute depression. The physician indicated that he treated the Veteran for PTSD symptoms directly after service, but such treatment records were unavailable. 

In a February 2008 letter, the Veteran's spouse reported that she witnessed the Veteran experiencing nightmares, outbursts, flashbacks, and lack of personal hygiene.

The Veteran received treatment at the Vet Center. January 2010 VA treatment records document his request for medication to treat "once in a while" depression. He reported going to bars to treat symptoms of depression. He stated that he has sleep problems, irritability and anxiety, but that he enjoys fishing, going to the casino, and poker games with friends. Symptoms of irritability and anxiety were noted. Mental status examination was normal. He was described as well groomed, well oriented, normal motor activity with articulate speech. Thought process was logical, intact memory, spontaneous affect but appropriate mood. Average intelligence and fair insight and judgment with no suicidal or homicidal ideations. In February 2010, the Veteran reported an increase in nightmare, insomnia, flashbacks, intrusive thoughts, and hypervigilance symptoms.

The Veteran was afforded a VA examination in July 2010. He reported symptoms of restlessness, problems sleeping, and increased alcohol consumption. He reported that he avoids discussions and places related to the Vietnam War, has nightmares, depression, anxiety, and memory problems. He reported taking anti-depressant medication and attending counseling to treat his symptoms. As for relationships, the Veteran has been married to his third wife for 19 years. He reported having a good relationship with 2 of his 3 children. He reported going to the bar to socialize and engaging in leisure activities, such as yardwork, casinos, and horse raises. On psychiatric exam, results were generally normal or unremarkable. The Veteran was described as clean, neatly groomed, appropriately and casually dressed. His attitude was cooperative, friendly, and attentive. Speech and psychomotor activity were unremarkable. He had a normal affect, happy mood, and intact attention and orientation. He denied delusions, hallucination, suicidal thoughts, panic attacks, and episodes of violence. It was noted that he had obsessive ritualistic behavior, such as checking locks. He was able to maintain personal hygiene and has no problems with activities of daily living. Immediate memory was mildly impaired. The examination reported found that the Veteran had PTSD symptoms of recurrent and intrusive recollections of the event, recurrent distressing dreams, intense psychological distress, avoidance behavior, and exaggerated startle response. The examiner classified these symptoms as mild severity and indicated that his symptoms had remained the same since his last examination in December 2004. The examiner concluded that the Veteran's PTSD was mild and would decrease work efficiency and ability to perform occupational tasks only during periods of significant distress.

Based on the foregoing, the Board finds that, prior to October 21, 2010, the evidence is against granting an initial disability rating higher than 30 percent for the Veteran's PTSD. The evidence does not show that his symptoms have been of the type and degree contemplated by the criteria for a 50 percent disability rating. Although December 2004 examination and January 2010 VA treatment records document a blunted and spontaneous affect, speech was normal. On July 2010 examination, mild immediate memory impairment was noted, but his memory has otherwise been described as intact. Notably, there is no indication of impairment of short-term and long-term memory. Further, the Veteran described having healthy relationships with his current wife, two of his children, and friends. He reported engaging in social activities, such as outings to bars, casinos, and horseraces. As such, prior to October 21, 2010 his symptoms are more akin to the 30 percent rating criteria already assigned.

The Board finds that the preponderance of the evidence is against the assignment of a higher rating, prior to October 21, 2010, other than that listed herein for the Veteran's PTSD on a schedular basis for any period on appeal. 38 U.S.C. § 5107(a). 

C. Other Considerations

The Board also finds that the schedular rating criteria adequately describe the Veteran's hearing loss and psychiatric symptoms. This means that the Veteran's disabilities do not manifest with an exceptional disability picture. See Thun v. Peake, 22 Vet. App. 111 (2008). In the absence of an exceptional disability picture, there is no factual basis for referral for a higher rating on an extraschedular basis for his service-connected disabilities. 38 C.F.R. § 3.321(b)(1). 

Here, the symptoms that the Veteran has reported are all contemplated by the rating schedule. For hearing loss, his symptoms include audio hearing problems. For PTSD, his symptoms include social and occupational impairment, depressed mood, anxiety and sleep problems. These are not unusual or exceptional symptoms, but rather are contemplated by the rating schedule. As such the regular schedular criteria provide for adequate compensation.

For these reasons, the Board declines to remand the claims just discussed for referral for extraschedular consideration.

III. TDIU

The Veteran contends that his PTSD was a major factor in his decision to retire from his last job in 2008. See May 2013 Hearing Testimony. 

A "schedular" TDIU may be assigned where the schedular rating is less than total if it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of 1) a single service-connected disability ratable at 60 percent or more, or 2) as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. See 38 C.F.R. §§ 3.340, 3.34l, 4.16(a) (2017).

From August 27, 2004, the Veteran was service-connected for PTSD rated 30 percent disabling and tinnitus rated 10 percent disabling. From October 29, 2004, he was service connection for peripheral neuropathy of the left and right lower extremities, each rated 10 percent disabling. He was also service-connected for tinnitus and bilateral hearing loss both rated noncompensable. His combined evaluation was 40 percent prior to October 29, 2004, and 50 percent from October 29, 2004 to October 21, 2010. Thus, he does not meet the percentage requirements of 4.16(a).

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16. 38 C.F.R. § 4.16(b). The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue. Id. 

Entitlement to a TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16 (2017). In determining the severity of impairment, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to his age or the impairment caused by non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2017).

Marginal employment shall not be considered substantially gainful employment for purposes of entitlement to TDIU. 38 C.F.R. § 4.16(a). Marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Id. Consideration shall be given in all claims to the nature of the employment and the reason for termination. Id.

As discussed above, the Veteran and his spouse testified that the Veteran's PTSD was a major factor in his decision to retire from his last job in 2008. See May 2013 Hearing Testimony. The spouse testified that during the Veteran's last 5 to 6 years of employment, there was an increase in people at his job site which increased the Veteran's anger. The Veteran reported having problems interacting with his coworkers and that he retired after 34 years of employment. He stated that he preferred to be alone.

The Board acknowledges that in October 2013 and March 2015 the Board remanded the TDIU claim for a VA examination to determine the functional effects of the Veteran's service-connected disabilities, however, during the pendency of the appeal the Veteran was granted a 100 percent rating for his PTSD, effective October 21, 2010. Thus, as the period on appeal is now prior to October 21, 2010, the Board finds that a new VA examination would not be helpful. 

In November 2013 and April 2016, the Veteran was sent a VA Form 21-8940 application for increased compensation because of unemployability. To date, he has not completed and returned the form. 

After a thorough review of the evidentiary record, the Board finds that prior to October 21, 2010 the functional limitations imposed by the Veteran's service-PTSD did not render him unable to secure and follow a substantially gainful occupation. He has not asserted that other service connected disabilities rendered him unemployable. During his July 2010 PTSD examination, the Veteran reported socializing well and going to bars, casinos, and horseraces. He reported that he retired in 2008 because he was age eligible. The examiner concluded that PTSD would cause transient or mild decrease in work efficiency. Notably, the July 2010 examination is consistent with the prior December 2004 examiner's opinion that the Veteran would have difficulty responding to others appropriately on a social basis, but he can understand commands without difficulty and does not present a threat of danger or injury to self or others. There are no contradictory opinions of record. 

However, the Court has held that the Board is the entity that determines whether a TDIU is warranted, not the experts. See Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2014) (explaining that "applicable regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner"). The Board's decision rests on all of the relevant and probative evidence.

As such, prior October 21, 2010, the evidence weighs against finding that his service-connected disabilities combined caused unemployability. Entitlement to TDIU is thus not established. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not applicable, and the claim must be denied. 38 U.S.C. § 5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Moreover, referral of the TDIU claim to the Director of Compensation Service for extra-schedular consideration is not warranted because the preponderance of evidence is against a finding that, prior to October 21, 2010, the Veteran's service-connected disabilities rendered him unable to secure or follow a substantially gainful occupation.


ORDER

Entitlement to an initial compensable rating for bilateral sensorineural hearing loss is denied.

Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD), prior to October 21, 2010, is denied.

Entitlement to a total disability rating based on individual unemployabitlity (TDIU) due to service connected disabilities, prior to October 21, 2010, is denied.



____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs